UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| F:A J. KIKSON, a Swedish corporation, et al., | ) ) ) | |
| Plaintiffs, vs. | ) ) ) | No. 02 C 8265 |
| UNDERWRITERS LABORATORIES, | ) ) ) | Honorable Ronald A. Guzman |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO PRECLUDE
PLAINTIFFS FROM INTRODUCING TESTIMONY OF DALE FEB
AND FOR SANCTIONS, AND IN SUPPORT OF ITS MOTION TO
PERMIT FEB'S TESTIMONY OR TO BAR UL'S EXPERT JEFFREY CORDRAY**

NOW COME Plaintiffs, F:A J. Kikson, a Swedish Corporation, and Jean Kikson ("Kikson"), by their attorneys, Daniel C. Murray, Steven S. Biss and James K. Toohey, and present this memorandum for two purposes: 1) as their response to Defendant Underwriters Laboratories, Inc.'s ("UL") motion to preclude testimony of Dale Feb and for sanctions, and 2) in support of their own motion in limine to permit Feb to testify or, in the alternative, to bar UL's expert Jeffrey Cordray:

I.  **INTRODUCTION**

UL has moved to bar Dale Feb ("Feb") as a witness at trial and for sanctions against both Plaintiffs and their counsel. *See*, Motion to Preclude, etc., prayer for relief. Plaintiffs have filed their motion to qualify Feb as an expert witness or, in the alternative, to bar UL's non-qualified

expert, Jeffrey Cordray ("Cordray"). Although we have not yet received UL's response to Plaintiffs' motion, we anticipate that it will be similar to its motion to preclude Feb's testimony.

As discussed herein, UL has a basis for filing its motion to preclude Feb's testimony as an expert witness. However, it has no basis for seeking to preclude Feb's testimony as a fact witness or to seek sanctions. UL's motion so overreaches in this regard that the Court might consider imposing sanctions against UL for making such baseless claims in aid of its strategy that focuses on *ad hominem* attacks and ratcheting up the cost of the litigation for all.

UL's motion is based on Plaintiffs' "audacity" to name Feb as a witness in their draft of the Final Pre-Trial Order ("PTO"). Plaintiffs respond that naming Feb as an expert in the Final PTO is the proper procedure under the instructional guidelines provided with the court's standard form in listing witnesses and exhibits proffered (*see, Northern District Local Rules, Form LR16.1.1 Final Pretrial Form*, par. 2(d), (e) and (m)), by which the parties set forth contested issues in the Final PTO. Further, naming Feb is required in order to lay the foundation for Plaintiffs' motion *in limine* asking that Feb be permitted to testify, which motion both has a justifiable basis and is necessary to make an appellate record. Regardless of the expert witness issue, naming Feb as a fact witness was undeniably justified, as he was properly identified under Rule 26(a)(1)(A) as a fact witness.

As the Court will recall being informed on July 29, 2005, when both sides appeared to submit the proposed Final PTO, Plaintiffs' counsel reported they had exchanged several drafts of the Final PTO with UL's counsel throughout the week ending July 29, 2005. In fact, for much of that week, Plaintiffs' counsel, Steven Biss, was physically present in the offices of Bell, Boyd & Lloyd, UL's counsel's firm. Mr. Biss was there to work with UL's counsel to prepare the Final PTO, so that it could be filed when due. In each draft submitted to UL during the week,

2

Plaintiffs listed Dale Feb as an expert and spelled out his qualifications to be read to the jury.[1] In each draft, Plaintiffs also included a proposed UL expert, Jeffrey Cordray, despite Plaintiffs' objection to his testifying. As counsel finished the Final PTO for filing, they reached the point at which each side had stated its objections to certain witnesses and exhibits proffered by the other side. Plaintiffs objected to Cordray, because he had not submitted any report, he had not been deposed, and UL's bare disclosure of his identity on the penultimate day discovery was to close did not satisfy any of the requirements of Rule 26(a)(2)(B). Upon completion of the Final PTO, to Plaintiffs' surprise, UL made no objection to Feb's testimony, either as a fact witness for which he was properly disclosed, or as an expert witness for which he was disclosed but which disclosure did not meet the requirements of Rule 26(a)(2)(B) by the close of discovery on May 26, 2004.[2]

Appearing, then, on July 29, 2005 Plaintiffs' attorneys informed the Court that they had prepared, signed and submitted the Final PTO to UL's counsel for signature, and that it was ready for filing. Remarkably, UL's counsel then advised the Court (which Plaintiffs' counsel then heard for the first time) that he "could not sign the Final PTO," because Mr. Feb had been listed as an expert witness. After being informed of the history of the preparation of the Final PTO, and after reviewing the Final PTO that Plaintiffs had signed but UL now refused to sign, the Court allowed UL to revise the Final PTO to include its objection to Mr. Feb's testimony – the proper manner of proceeding as opposed to UL's refusal to sign the document.

---

[1] The disclosure lists him as a fact witness on state and local requirements for chimney lining products, which he was listed as in Kikson's initial Rule 26(a)(1)(A) disclosures. These initial disclosures listed Feb as a probable expert witness as well. Although such disclosure at that time did put UL on notice that Kikson intended to call at least this one expert, Kikson does not contend that it was sufficient to meet the disclosure requirements for experts set out at Rule 26(a)(2).

[2] Although Feb's disclosure did not satisfy those requirements as of May 26, 2004, Plaintiffs sought leave to make a proper disclosure on two occasions during the two months following the close of discovery, and on July 23, 2004, they served Feb's Rule 26(a)(2)(B) report as an offer of proof.

Expressing "shock" (reminiscent of the "shock" the Claude Raines character expressed in *Casablanca* at finding gambling at Rick's "Café Americain," as he was being handed his winnings), to this Court and claiming that it had been caught-off guard by Plaintiffs' listing Feb as a witness, UL apparently was prescient enough to present for filing at the close of the July 29 hearing its motion to preclude Feb's testimony. At the commencement of that hearing, Plaintiffs had served on UL and filed with the court, their own motion *in limine* seeking permission to call Feb as a witness, or in the alternative to bar UL's expert Jeffrey Cordray.

## II. DALE FEB AS AN EXPERT WITNESS

The Court is well aware of the respective positions of the parties regarding whether Feb should be permitted to testify as an expert witness. Plaintiffs did disclose Feb in their Rule 26(a)(1)(A) fact witness disclosures. In that disclosure served at the outset of the case, even prior to UL's removing the case from the State Court in Virginia to the Federal District Court in Virginia, Plaintiffs disclosed Feb both as a fact witness and as a probable expert witness. After the case was removed to federal court, then transferred to this Court, and after this Court denied UL's motion to dismiss based on a claimed lack of standing, this Court entered an order that discovery was to be completed by May 26, 2004 and dispositive motions were to be filed by June 15, 2004.

Shortly after May 26, 2004, and immediately upon realizing that UL would urge its position that all discovery closed on May 26, 2004, Kikson sought UL's agreement to request that the Court extend discovery to permit both sides to disclose expert reports and depose experts. UL refused. Plaintiffs promptly made a motion, seeking relief that included a clarification of the effect of the discovery closure order and request that it be re-opened to allow

4

both sides to qualify their experts.[3] UL opposed, claiming prejudice because it had already filed and served its motion for summary judgment and memoranda of law and undisputed facts in reliance on the order and Plaintiffs' failure to qualify a liability expert. This Court denied Plainfiffs' motion during a hearing in open court.

At the same time, the Court gave Kikson leave to respond to UL's motion to bar Kikson and Stewart from offering evidence of damages, or to complete their depositions, because they had been unable to appear to complete their depositions before the discovery cutoff date. That matter was assigned to Magistrate Judge Mason, who examined UL's motion with Kikson's response explaining what was done, what was not done, and why during the last month discovery was open. Magistrate Judge Mason denied UL's motion to complete the depositions or bar the testimony.

Upon reviewing UL's motion for summary judgment and memoranda of law and undisputed facts, Kikson asked this Court to review its own order refusing to reopen expert discovery. Plaintiffs asked leave to submit Mr. Feb's Rule 26(a)(2)(B) report and allow UL to respond with its own expert report or, in the alternative, to bar all experts, because neither Plaintiffs' nor UL's experts had been disclosed in compliance with Rule 26(a)(2)(B) by the May 26, 2004 deadline. Both Mr. Feb and Mr. Cordray's identities and the general nature of their respective specialties were disclosed (Feb at the outset in the initial Rule 26(a)(1)(A) disclosures and Cordray on the day before discovery closed), but neither had been disclosed pursuant to Rule 26(a)(2)(B) requirements as of May 26, 2004. Were the court to deny leave to Feb to testify, Plaintiffs asked leave to submit Feb's expert report as an offer of proof.

---

[3] While Kikson has candidly admitted his misunderstanding of the Court's discovery closure order, UL presently has it both ways. If the discovery cutoff date bars Kikson from calling a liability expert who had not been qualified by timely disclosures complying with Rule 26(a)(2)(B), then UL must be barred from calling a damages expert <u>who also was not disclosed properly under the same Rule until July 29, 2005, over a year after Kikson's ostensibly late disclosure.</u>

In making the motion for leave to submit Feb's expert report, Plaintiffs anticipated that this Court would consider it, not that it would be assigned to Magistrate Judge Mason. When Magistrate Judge Mason received the motion, he noted that this Court had already considered the matter of reopening discovery, and concluded that to grant Plaintiffs' motion would amount to a reversal of a prior order of this Court, something Judge Mason was not prepared to do.

Circumstances in the case have changed since those orders were entered. The Court initially denied the motion to reopen discovery, because UL claimed prejudice due to its having already prepared and filed its motion for summary judgment and memorandum in support thereof. UL was protected from any such prejudice by the denial of leave to file Feb's report at that time. The sanction gave UL the benefit of presenting its motion for summary judgment unopposed by expert testimony, and in deciding UL's motion, the Court did not consider Feb's report. Thus, Plaintiffs have already been severely sanctioned for their misreading of the intended expanse of the discovery closure order, in that UL's summary judgment motion now has been granted in part and denied in part as to four of Plaintiffs' claims,

The parties are moving forward to trial. Plaintiffs have listed their witnesses, and notably, UL now is attacking the qualifications of Mr. Kikson and Mr. Stewart to testify concerning "the knowledge, competence or expertise required and exercised by UL engineers in implementing the test protocol set forth in UL Standard 1777 and other certification protocols." See Defendant UL's Motion In Limine To Preclude "Expert" Evidence. While Plaintiffs will file a memorandum in opposition to that motion demonstrating that Kikson and Stewart are competent to testify to such matters, and their testimony is not subject to a *Daubert* challenge, it is equally clear that if Feb were allowed to testify, there would be no need to argue over Kikson's or Stewart's qualifications to testify to the facts surrounding UL's behavior. Their

6

testimony would provide the factual bases for Dale Feb's testimony as a qualified expert in the chimney manufacturing, testing, and lining industry concerning violations by UL engineers of industry and UL standards.

Thus, in their own motion in limine and in opposition to UL's motion to preclude, Plaintiffs renew their request that Dale Feb be allowed to qualify and testify as an expert because: (a) Feb's testimony is important and affects Plaintiffs' substantial right to present testimony critical to an effective presentation of the case against UL; (b) this Court has the discretion to grant the relief sought; (c) because of the above circumstances, it is at a minimum necessary to correct Magistrate Judge Mason's error in refusing to allow Plaintiffs to make an offer of proof.

    a.    <u>Mr. Feb's Testimony Is Important And Affects Plaintiffs' Substantial Right.</u>

Four of Plaintiffs' claims survived UL's motion for summary judgment; thus, Feb's testimony was not required to make out a *prima facie* case as to those claims. However, there is no question that the testimony of an independent, qualified expert will be vitally important in presenting Kikson's case to the jury. UL's strategy is obvious. Even if its motion in limine seeking to bar Kikson and Stewart from commenting on the competence of UL's engineer is denied, UL will seek to present Kikson as a foreign national unfamiliar with the safety and operating procedures adopted in the U.S. to protect the public from inferior or dangerous products, while portraying UL as an eleemosynary "not-for-profit" corporation motivated only by a quest for the common good in its protection of the public against unsafe products. Dale Feb will show the lie of that defense. He will show that the handling of this testing by UL and its assigned engineers went from bungling to inexcusably neglectful to intentionally deceitful, being

7

motivated by hubris, vanity, fear of embarrassment, and ultimately a desire to injure Kikson as a means of protecting particular competitors.

      b.    <u>The Court Should Exercise Its Discretion To Allow Mr. Feb To Testify.</u>

Although the court ordered discovery closed by a date certain, there was no mention of the times and sequence for the disclosure of expert testimony. Plaintiffs relied upon Rule 26(a)(2)(C) to address such a situation, in that it provides in pertinent part that:

> "These [expert] disclosures shall be made <u>at the times and in the sequence directed by the court</u>. In the absence of other directions from the court . . ., the disclosures shall be made at least 90 days before the trial date . . . ." (emphasis added)

Plaintiffs intended to, and in fact have, abided by the expert disclosure timing set forth in Rule 26(a)(2)(C). Moreover, that Plaintiffs' reading of Rule 26(a)(2)(C) as setting the due date for their expert disclosures is justified is evinced by the Rule's operative effect <u>in the absence of such timing and sequencing being ordered by the court</u>, as is the case here. On the other hand, for "discovery" (as compared to "disclosures" of experts), Rule 26(d) specifically eschews any sequencing of discovery. See, e.g. *Ridge Chrysler v. Daimler Chrysler*, 2004 WL 3021842 (N.D. Ill. 2004) (court ordered sequencing of the parties' expert disclosures).

Thus, it fully appears that for expert disclosures, Rule 26(a)(2)(C) calls for "times and . . . sequence directed by the court," or, in the absence thereof, 90 days before trial. Distinguishable is other discovery, which may occur in any sequence (see Rule 26(d)), and for which, as Plaintiffs understood it, this Court had set a cutoff date, but <u>not</u> to the exclusion of the plain language and operation of Rule 26(a)(2)(C) governing the timing for expert disclosures, in this case, no later than 90 days before trial. UL evidently had the same understanding of Rule 26(a)(2(C)'s application here because it, too, did not make its required Rule 26(a)(2)(B)

8

disclosure until the Final PTO was filed on July 29, 2005, which is 14 months after the discovery cutoff in this case, but still 90 days before trial.

The severity of the sanction against Plaintiffs based upon their good faith misinterpretation of the scope of the Court's discovery closure is extremely harsh. Its harshness can be seen even more clearly now, given that UL has moved to preclude Plaintiff and former Plaintiff Stewart from testifying to UL's tortious conduct based on lack of qualifications. Moreover, the strict construction of the effect of the discovery closure order against Kikson's liability expert but not against UL's damages expert cannot stand. Although the trial court is vested with broad discretion in enforcing its own orders, such discretion is not unlimited and must be viewed in light of the circumstances and the alternative methods of enforcing its orders available under Rule 37. *Reed v. Binder*, 165 F.R.D. 424 (D. N.J. 1996) (although numerous violations of Rule 26(a)(2)(B), to bar expert testimony would be unduly harsh, and court had discretion to fashion another remedy).

Although the Court has set a trial date, time remains within which UL can depose Mr. Feb and prepare completely for his testimony. UL has had Feb's Rule 26(a)(2)(B) report and qualifications in hand for more than one year. Kikson has made no secret and there can be no claim of surprise concerning the specific nature of Feb's testimony. The claims of prejudice in paragraph 11 of UL's motion ring hollow.

Plaintiffs' respectfully request that in the exercise of its discretion, the Court conclude that the prior sanction barring expert testimony in opposition to the motion for summary judgment is sufficient, that extending the bar through trial is not necessary or justified, and that the parties be permitted to exchange expert depositions, such that UL be allowed to take the deposition of Feb and Plaintiffs be allowed to take the deposition of Cordray within 30 days

following the ruling on this motion as the Court has the discretion to do. *Northern District Local Rules, Form LR16.1.1 Final Pretrial Form*, par. 2(*I*).

    c. The Proper Method To Allow The Court To Correct Error And To Assign Error On Appeal.

Absent all else, Kikson was justified in listing Dale Feb as a witness in the Final PTO to lay the foundation for making an offer of proof. Magistrate Judge Mason denied leave to make an offer of proof. It is not unusual for a court to consider an offer of proof and then reject it. However, there is no possible basis for denying leave to make an offer of proof. Federal Rules of Evidence Rule 103(a) sets forth the procedure for rulings on evidence. The Advisory Committee Notes to the 1972 Proposed Amendment to Rule 103(a) state:

> "Rulings on evidence cannot be assigned error unless (1) a substantial right is affected, and (2) the nature of the error was called to the attention of the judge, so as to alert him to the proper course of action and enable opposing counsel to take corrective measures. The objection and the offer of proof are the techniques for accomplishing these objectives."
>
> Thomson West, *Federal Civil Judicial Procedure and Rules*, 2005 Edition, Rules of Evidence, Rule 103, Advisory Committee Notes 1972 Proposed Rules, p. 376.

Magistrate Judge Mason's ruling in denying Plaintiffs leave to make an offer of proof frustrated Plaintiffs' attempt to make a record and precluded this Court from considering it in the context of the motion for summary judgment. We are now before this Court asking to make the offer so that the Court may decide if Feb may testify at trial. The Committee Notes to the 2000 Amendment to Rule 103(a) state that, it is seldom clear or predictable whether the motion made earlier in the litigation is definitive or whether such motion must be renewed at a later stage to preserve claimed error, and the burden is on counsel to raise the matter again where there is doubt. "The Amendment imposes the obligation on counsel to clarify whether an *in limine* or

other evidentiary ruling is definitive when there is doubt on that point." *See, e.g., Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 520 (3rd Cir. 1997). The Committee goes on to state:

> "A definitive advance ruling is reviewed in light of the facts and circumstances before the trial court at the time of the ruling. If relevant facts and circumstances change materially after the ruling has been made, those facts and circumstances cannot be relied upon on appeal unless they have been brought to the attention of the trial court by way of a renewed, and timely, objection, offer of proof, or motion to strike. *See, Old Chief v. United States*, 519 U.S. 172, 182, n. 6 (1997)..."

Accordingly, having never before been permitted to make an offer of proof, and this Court having never had the opportunity to review the offer of proof in considering whether to allow Mr. Feb to testify at any stage, and circumstances having now changed, there is enough doubt whether a claim of error would be preserved if Plaintiffs had not listed Mr. Feb in the Final PTO and if it had not filed its motion *in limine* seeking to allow him to testify. More immediately, it would have deprived this Court the opportunity to see the proffer in light of the Court's more recent detailed analysis of the facts in writing its opinion denying UL's motion for summary judgment.

While UL cries foul against Plaintiffs' attempt to qualify Mr. Feb, it seeks to qualify Mr. Cordray, who also failed to file a report. Further, UL has renewed its own motions that it previously made and lost to bar Plaintiffs from testifying to certain lost profits and to testify as experts. *See,* UL's Memorandum in Support of its Motion to Preclude Certain Damages Evidence presented on June 15, 2004, and denied by Magistrate Judge Mason on July 14, 2004; *see also,* UL's Motion to Strike Affidavits of Jean Kikson presented on October 12, 2004, granted in part and denied in part in Memorandum Opinion dated April 3, 2005. In those motions, UL sought to strike or bar testimony of Jean Kikson regarding damages on various

grounds, including Kikson's lack of expertise and competence, the quality of the proof, and the law relating to recoverable damages. Compare these motions with UL's recently filed Motions *in Limine* "To Preclude Lost Profits Evidence..." "...To Preclude "Expert" Testimony" and "...To Preclude Use of Kikson's Tax Returns," and the Court will see they are little more than renewals of motions already made and lost.

### III. MOTION TO PRECLUDE FEB'S TESTIMONY AS A FACT WITNESS IS WITHOUT MERIT

Furthermore, despite the expanse of UL's motion to preclude, Feb is clearly qualified to testify as a fact witness. Nothing stated in UL's motion even suggests a basis for an argument otherwise. He was properly disclosed as such in the initial Rule 26(a)(1)(A) fact witness disclosures.

### IV. SANCTIONS ARE UNWARRANTED

Likewise, there is no basis for UL's motion for sanctions simply because Mr. Feb is proffered as a fact and expert witness. It is clear on the record set forth above that: a) Plaintiffs have a strong basis for seeking to allow Feb to become qualified to testify, b) they have followed appropriate procedures under the Federal Rules and Local Rules for seeking that relief, c) even if the relief sought is denied, they were required by Rule 103 to make an offer of proof and to make certain that the offer of proof was made of record and considered by the court at this time, and d) Feb is clearly qualified to testify as a fact witness in any event.

Plaintiffs seek no sanctions against UL for renewing its motions. However, if the Court agrees with Plaintiffs that UL's repetitive use of the "sanction card" constitutes harassment and efforts at oppression to increase the costs of this litigation, the Court could award Plaintiffs the portion of the cost of responding to UL's motion that relates to a request for sanctions. *See*, F.R.Civ.P. 37(a)(4)(B).

12

## V.  CONCLUSION

Plaintiffs request that Defendant's motion to preclude Plaintiffs from introducing the testimony of Dale Feb and for sanctions be denied. If the Court is so inclined, it would be appropriate to award Plaintiffs for one-half the time incurred in responding to those parts of UL's motion seeking sanctions and seeking to bar Feb as a fact witness.

Further, as to Plaintiffs' motion to allow Plaintiff to make an offer of proof pursuant to Rule 103(a) and based thereon to allow Dale Feb to testify or, in the alternative, to bar Jeffrey Cordray from testifying if Feb is barred, Plaintiffs request:

Alternative No. 1:

That the Court allow Plaintiffs' to make their offer of proof, that based upon the offer of proof, it allow Plaintiffs to complete the Rule 26(a)(2)(B) disclosure of Dale Feb by having him list his compensation and history of testimony given during the last four years, and that it also allow Defendant to complete the disclosure of Jeffrey Cordray within five days, and that it require both experts be deposed within twenty-eight days of the entry of the Court's order.

Alternative No. 2:

Should the Court disallow Mr. Feb's testimony at trial, then Plaintiffs must be permitted to make their offer of proof to preserve the issue should an appeal become necessary. Moreover, if Feb is barred, Cordray must be barred too, as Defendant's submission of Cordray's expert report 14 months after the close of discovery would require the same preclusion order from the Court.

WHEREFORE, for the foregoing reasons and for the reasons stated in their own Motion *in Limine*, Plaintiffs pray for the relief requested in their motion in limine, and that Defendant's motion in limine to preclude the testimony of Dale Feb as a fact or expert witness and for sanctions be denied in its entirety.

          Respectfully submitted this 19th day of August 2005

          F:A J. KIKSON
          JEAN KIKSON

          By *James Toohey*
          One of the Attorneys for Plaintiffs

Daniel C. Murray
James K. Toohey
JOHNSON & BELL, LTD.
55 East Monroe Street
Suite 4100
Chicago, Illinois 60603
Telephone: 312.372.0770

Steven S. Biss
1711 East Main Street, 2nd Floor
P.O. Box 592
Richmond, Virginia 23219
Telephone: 804.643.2090

## Certificate of Service

I, Gina McPheeters, hereby certify that on August 19, 2005, true and correct copies of the following were *hand-delivered* to counsel for Defendant, Michael Abernathy, Esq., Joseph C. Wylie II, Christopher I. Cedillo, BELL, BOYD & LLOYD, LLC, 70 West Madison, Suite 1700, Chicago, Illinois 60602, *and by U.S. mail to:* Geoffrey A. Lewis, Charles A. Rego, Underwriters Laboratories Inc., 333 Pfingsten Road, Northbrook, Illinois 60062:

1. **Plaintiffs' Memorandum in Opposition to UL Motion in Limine to Exclude Plaintiffs' Evidence of Lost Profits**

2. **Plaintiffs' Memorandum in Opposition to UL Motion in Limine to Preclude Testimony of Witnesses not Identified in Plaintiffs' Rule 26(a)(1) Disclosures**

3. **Plaintiffs' Memorandum in Opposition to UL Motion in Limine to Preclude Evidence or Argument Concerning UL's Financial Condition**

4. **Plaintiffs' Response to Motion to Preclude "Expert" Evidence**

5. **Plaintiffs' Response to Motion to Preclude Use of Tax Returns**

6. **Plaintiffs' Response to Defendants' Motion to Preclude Plaintiffs From Introducing Testimony of Dale Feb and for Sanctions, and in Support of its Motion to Permit Feb's Testimony or to Bar UL's Expert Jeffrey Cordray**

*/s/ Gina McPheeters*